TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00099-CV






In the Interest of E.N.C.







FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 210,653-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING






C O N C U R R I N G A N D D I S S E N T I N G O P I N I O N


 When E.N.C. was born in 2004, Carr voluntarily placed her for adoption, selecting
the Dauns as the adoptive parents through a licensed adoption agency. After she changed her mind 
nine months later and sought return of the child, the Dauns filed this suit in response. In May 2008,
this Court abated the appeal for the trial court to make specific findings of fact and conclusions of
law. It did so. Among the findings were the following:

 

 5. Tammie Renae (1) Carr voluntarily placed [E.N.C.] with Kerry Jay and Lisa
Daun on August 2, 2004. Although Tammie Renae Carr testified she
requested the child to be returned to her in May 2005, the Court finds her
testimony to be self-serving and of recent fabrication to posture her position
in this litigation. It is not credible, under the evidence, to believe that she
requested or insisted on the return of the child at any time prior to May of
2005. Further, Tammie Renae Carr appeared in open court on June 2, 2005,
and consented to the Dauns being named managing conservators of [E.N.C.]. 
At no time prior to the final hearing in this cause did Tammie Renae Carr
request a temporary hearing to establish her periods of possession, determine
a support obligation, or provide any financial support for the child.

 

 6. Tammie Renae Carr intended to place the child for adoption, and selected
Kerry Jay and Lisa Daun through a licensed adoption agency in Texas. 
Tammie Renae Carr did not disclose her intent to place the child for adoption
to Donald Ray Garner, Jr. until the date of birth of the child. Tammie Renae
Carr disclosed the violent nature of her relationship with Donald Ray Garner,
Jr. to her counselor at the adoption agency, as well as to the director of the
adoption agency, both before and after the birth of the child. Tammie Renae
Carr believed that Donald Ray Garner, Jr. was capable of harming the child
and/or fleeing with the child if the child were returned to her care. Her later
assertions to the contrary are not credible, and are not accepted by the Court.


 7. The testimony provided to the court proved that Tammie Renae Carr had
failed to protect her other minor child [ ] from family violence, and would fail
to protect [E.N.C.] from family violence. Tammie Renae Carr testified that
Donald Ray Garner, Jr., was a violent person who had assaulted her and her
other minor child in the past on several occasions.


 8. Although Tammie Renae Carr testified that she had terminated the
relationship with Donald Ray Garner, Jr. in December 2003, the credible
evidence showed that Tammie Renae Carr continued to be in an intimate
relationship with Donald Ray Garner, Jr. through the final trial of this cause. 
The continuation of the relationship exposes the child to substantial risk of
emotional or physical harm, and Tammie Renae Carr's conscious choice to
be untruthful, or less than candid about the continuing relationship, presents
an additional risk of emotional or physical harm to the child. The court is
persuaded that the credible evidence showed that Tammie Renae Carr had
been involved in a series of relationships with violent partners, including the
biological father of [E.N.C.].


 9. Although there was testimony that Tammie Renae Carr was the victim of
violence in her relationships with some of her partners, the credible evidence
showed that she was also a participant. The credible evidence showed that
she had a violent temper, and that others had been the victim of her violent
acts. Further, and equally persuasive, was the evidence that Tammie Renae
Carr refused to seek protection for her children in violent situations, and
remained with violent partners despite the danger. Credible testimony, from
non-party witnesses and experts persuaded the Court that this cycle of
violence would continue if Tammie Renae Carr were awarded possession or
access to the child.

 

 10. The court is persuaded that the credible evidence showed that Tammie Renae
Carr's other minor child had been the victim of family violence as a direct
result of Tammie Renae Carr's actions. The court is also persuaded that the
credible evidence showed Tammie Renae Carr's other minor child had been
physically present and a witness to family violence between Tammie Renae
Carr and other men on at least two or more occasions. The court accepted,
as credible evidence, through the testimony of multiple family members of
Tammie Renae Carr, that Tammie Renae Carr had a temper, was an active
participant in incidents of family violence, and was not willing, or capable,
of avoiding Donald Ray Garner, Jr.


* * *

 

 12. The credible evidence provided to the court proved that Tammie Renae Carr
was emotionally, and physically incapable of caring for the child. To the
contrary, the credible evidence showed that Tammie Renae Carr would place
the child at substantial risk for emotional or physical harm.


* * *


 15. The Court diligently observed the witnesses in Court, and carefully
considered the written record of their statements prior to testifying. In
particular, Tammie Renae Carr was an untrustworthy witness. Differences
between her prior statements and her testimony were unexplained, and
glaringly inconsistent with her own prior statements and actions, and
glaringly inconsistent with the testimony of disinterested or non-party
witnesses. Her testimony seemed, on the whole, calculated to support her
position in the litigation and with little regard for the truth.



 Among the conclusions of law were the following:

 

 11. Tammie Renae Carr should not be allowed access to [E.N.C.] because
Tammie Renae Carr has a history or pattern of committing family violence
during the two years preceding the date of the filing of this suit or during the
pendency of this suit.


* * *

 

 16. It was appropriate to include in the final rendition of judgment, provisions
requiring Tammie Renae Carr to attend and complete a psychological
evaluation before additional periods of visitation should be granted beyond
the two specified periods contained in the court order.


* * *

 

 18. The Court finds that the award of two supervised periods of possession
between Tammie Renae Carr and the child for specified hours on two certain
dates placed the minimal restrictions on Tammie Renae Carr's possession of
the child consistent with protecting the child's physical health, emotional
welfare, and overall best interest. The court further finds that the
psychological evaluation ordered by the court, was with a reliable expert
whom the court could look to for important information, and had the right to
include in the final order of the court.



Based upon an extensive record that informed the trial court's task, the standard of review, and the
thorough findings of fact and conclusions of law--particularly the findings regarding credibility and
risks to the child--I would affirm the trial court's judgment in all respects. The trial court did not
foreclose all opportunity for further visitation of the child by Carr, but conditioned it on "minimal
restrictions on Tammie Renae Carr's possession of the child consistent with protecting the child's
physical health, emotional welfare, and overall best interest." I therefore concur in the judgment to
the extent the majority affirms the judgment and dissent to the majority's conclusion that the trial
court erred in limiting Carr's access and possession. 



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Filed: March 13, 2009
1. Carr's middle name is correctly spelled "Renea."